UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

LORD & TAYLOR ECOMM LLC,

          Plaintiff,

  - against -

CIRCLE BUSINESS S.A.,
ROCCO MENGA, and GIAN
LUIGI CACCHIARELLI,

         Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

23 Civ. 6315 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Lord & Taylor EComm LLC ("L&T" or "plaintiff")[1] brings suit against one of its distributors, Circle Business S.A. ("Circle"), after goods it purchased from Circle were examined by an expert and determined to be counterfeit. Plaintiff seeks monetary damages from Circle and its principals, Rocco Menga and Gian Luigi Cacchiarelli (together, "defendants"), for, <u>inter alia</u>, breach of contract, intentional fraud, and tortious interference. <u>See</u> SAC ¶¶ 90-117. Defendants have filed a motion to dismiss plaintiff's complaint in its entirety. <u>See</u> ECF Nos. 28-30. For

---

[1] Lord & Taylor, a department store chain, filed for bankruptcy in August 2020. ECF No. 25, Second Amended Complaint ("SAC") ¶¶ 10-15. Saadia Group, LLC subsequently purchased Lord & Taylor's intellectual property and e-commerce assets in a bankruptcy auction for $12,000,000, and launched L&T, an e-commerce site, using the Lord & Taylor brand name. <u>Id.</u> ¶¶ 18, 20.

the reasons discussed herein, defendants' motion is granted in part and denied in part.

**BACKGROUND**

## I.    Factual Background[2]

In May 2021, L&T entered into an arrangement with Circle, a wholesale fashion distributor, to purchase designer merchandise for resale on its e-commerce website. SAC ¶ 21. Under this arrangement, L&T selected merchandise to purchase and wired payment to Circle, which created a Purchase Order to memorialize the transaction. Id. ¶ 25. Circle would then ship the items from its warehouse in the Netherlands to L&T's warehouse in New Brunswick, New Jersey via John F. Kennedy Airport in New York, New York or Newark Airport in Newark, New Jersey. Id. After the items were delivered, Circle would send L&T a "Declaration of Authenticity" affirming that the items in the Purchase Order were authentic. Id.

Between May 2021 and December 2022, L&T paid Circle $3,820,037.57 for 33 Purchase Orders containing a total of 7,557 items. Id. ¶¶ 22-23, 27. A Circle executive signed Declarations

---

[2]    The facts herein are drawn from plaintiff's Second Amended Complaint and the exhibits attached thereto, see SAC, which the Court finds incorporated by reference. See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

of Authenticity affirming the authenticity of the merchandise contained in each of these 33 Purchase Orders. Id. ¶¶ 25, 31, 48, 53, 55, 60, 65, Exs. K, Q, T, W, Z.

After L&T began to sell Circle merchandise on its website, some customers returned their purchases, with the majority of those returns involving merchandise from Gucci and Yves Saint Laurent. Id. ¶ 29. In late 2022 and early 2023, plaintiff received complaints from customers that they had received counterfeit items, all of which concerned merchandise that L&T had purchased from Circle. Id. ¶ 30. Around this time, L&T also became aware that customers had posted on blogs and internet message boards about having received counterfeit merchandise from L&T. Id. ¶ 33, Ex. B. On January 5, 2023, Circle sent a letter to L&T warranting that all inventory it sold to L&T was "authentic and not counterfeit" and agreeing to "indemnify L&T related to any breach of such representation and warranty[.]" Id. ¶ 31, Ex. A at 1.

On February 15, 2023, L&T hired an authentication expert, Luxury Appraisals & Authentication ("LA&A"), to review and confirm the authenticity of the merchandise it had purchased from Circle and other vendors. Id. ¶ 36, Ex. C. On March 1, 2023, LA&A issued a report to L&T stating that 116 of the 290 items it had examined were counterfeit. Id. ¶¶ 38-40, Exs. D-G, L, U, X. All 116 items had been sold to L&T by Circle, including 102 of 103 Gucci items

-3-

and all 14 Yves Saint Laurent items that LA&A examined.[3]  Id.  The remaining items in the sample, which had been sold to L&T by non-Circle vendors, were all determined to be authentic.  Id. ¶ 41.

After receiving the LA&A report, L&T removed all Circle merchandise from its sales platforms.  Id. ¶ 67.  On March 14, 2023, L&T sent a letter to Circle sharing the results of LA&A's review and requesting that Circle pay L&T $2,388,205.98, the amount L&T paid for the items identified as counterfeit, within ten days. Id. ¶ 69, Ex. AA.  Circle denied the counterfeiting allegations, refused to pay L&T the requested amount, and then rejected a subsequent settlement offer from L&T.  Id. ¶¶ 70-72.

On June 15, 2023, plaintiff received a letter from counsel for Gucci America, Inc. ("Gucci") stating that it had learned that L&T was "trafficking in counterfeits" and requesting that L&T "permanently cease all sales of Gucci brand products going forward."  Id. ¶¶ 73-76, Ex. BB at 3.  Gucci subsequently filed a complaint against L&T for trademark violation in this District on November 21, 2023.  Id. ¶ 77, Ex. CC.  All three items identified as counterfeit in Gucci's complaint had been sold to L&T by Circle.[4]

---

[3]    The items determined to be fraudulent included: black Gucci Horsebit Men's Jordaan Loafers and Leather Horsebit Slippers, SAC ¶¶ 44-48, Exs. F-K; a black Yves Saint Laurent Lou bag, id. ¶¶ 49-55, Exs. L-T; a black Gucci Marmont Camera Bag, id. ¶¶ 56-60, Exs. U-W; and a black Gucci Slim Double G Belt, id. ¶¶ 61-66, Exs. X-Z.

[4]    The three items that Gucci identified in its complaint were: a Red Marmot Bag, shipped as part of PO # 48708, SAC ¶ 79, Exs. V-W; a Black Gucci Marmont

-4-

Id. ¶¶ 78-81.  In a default judgment order issued on August 16, 2024, the court found L&T liable for trademark infringement, counterfeiting, and dilution.  See Gucci America, Inc. v. Lord & Taylor Ecomm LLC, et al., No. 23 Civ. 10239 (LGS), ECF No. 68 (S.D.N.Y. Aug. 16, 2024).[5]

## II.  Procedural History

On July 21, 2023, a little over one month after Gucci filed suit against L&T, plaintiff filed the instant suit against defendants, alleging breach of contract, fraud, tortious interference, indemnification, and lost reputation claims and seeking damages of not less than $10 million.  See ECF No. 1.

Plaintiff filed an amended complaint on January 18, 2024. See ECF No. 14.  On May 28, 2024, defendants filed a letter requesting a pre-motion conference to discuss a proposed motion to dismiss plaintiff's claims.  See ECF No. 18.  After holding this conference, the Court issued an order permitting plaintiff to amend

---

Flap Bag, shipped as part of PO # 48708, id. ¶ 80, Exs. V-W, DD; and a White Gucci Horsebit 1955 Camera Bag, shipped as part of PO # 1840478, id. ¶ 81, Exs. EE-FF.

[5]    The court subsequently referred the case to a magistrate judge for a damages inquest.  See Gucci America, Inc., ECF No. 69.  On April 9, 2025, Magistrate Judge Robyn F. Tarnofsky issued an Amended Report and Recommendation recommending that the Court issue a final judgment of default in favor of Gucci, permanently enjoin L&T from infringing Gucci's marks, and award Gucci statutory damages in the amount of $1,300,000 under the Lanham Act, 15 U.S.C. § 1117(c)(2). Id., ECF No. 84.  As of the date of this order, the court has not yet adopted Judge Tarnofsky's Report and Recommendation.

its complaint for a second time on or before September 9, 2024.
See ECF No. 20.

Plaintiff filed its Second Amended Complaint on September 10,
2024.[6]  See SAC.  Plaintiff attached to the SAC more than 115 pages
of exhibits, including, inter alia: the January 5, 2023 letter it
received from Circle, id. Ex. A; screenshots of online complaints
regarding counterfeit merchandise purchased from L&T, id. Ex. B;
L&T's contract with LA&A, id. Ex. C; the list of items examined by
LA&A, id. Ex. D, and excerpts from LA&A's report, id. Exs. E-G, L,
U, X, DD-EE; and the Purchase Orders, payment records, and
Declarations of Authenticity for the items that LA&A determined to
be counterfeit, id. Exs. H-K, M-T, V-W, Y-Z, FF-GG.

On October 31, 2024, defendants moved to dismiss the SAC
pursuant to Fed R. Civ. P. 12(b)(6).  ECF Nos. 28-30.  Plaintiff
filed its opposition on December 3, 2024, ECF No. 35 ("Opp."), and
the motion was fully briefed on December 19, 2024, ECF No. 36
("Reply").

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a non-
movant's pleading "must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on

---

[6]    Plaintiff initially attempted to file the SAC on September 9, 2024, but
the Clerk of Court's office determined that the pleading was deficient.  ECF
Nos. 21-24.

its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged."  Id.

A court must "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in [plaintiff's] favor[.]"  Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]"  Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

In ruling on a 12(b)(6) motion to dismiss, a court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . [and] documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  Brass v. Am. Film. Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

Defendants move to dismiss plaintiff's claims in full.  We address each of defendants' arguments in turn.

-7-

## I.    Claims against Individual Defendants

As an initial matter, defendants contend that plaintiff has insufficiently pled its claims against individual defendants Rocco Menga and Gian Luigi Cacchiarelli, asserting that the SAC fails to attribute any unlawful or fraudulent conduct to either defendant. ECF No. 30 ("Mot.") at 10-11.  Plaintiff, meanwhile, maintains that its claims against Menga and Cacchiarelli are "sufficient[] . . . to pierce the corporate v[ei]l[,]" asserting that it has adequately alleged "bad faith misrepresentations by [Menga and Cacchiarelli] via Circle business regarding the authenticity of the counterfeit goods sold to L&T." Opp. at 16.

New York courts disregard the corporate form only "reluctantly[.]"  Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979).  To pierce the corporate veil, a plaintiff must establish: (i) "that the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997) (quoting American Fuel Corp v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)).

Plaintiff's claims do not make it past the first step of this analysis.  Plaintiff has failed to plead facts sufficient to show

-8-

that Menga and Cacchiarelli exercised any control over Circle in its dealings with L&T, much less the "complete domination" required to disregard Circle's corporate structure. Id. In fact, the SAC mentions Menga and Cacchiarelli only twice -- once when establishing the existence of diversity jurisdiction, and again when listing the names and residences of the parties. SAC ¶¶ 3, 8-9. Nor did either Menga or Cacchiarelli sign any of the letters sent to L&T or other documents attached as exhibits to the SAC. See, e.g., SAC Exs. A, K, T, W, Z.

Given plaintiff's failure to allege any improper behavior by Menga and Cacchiarelli, much less facts sufficient to establish their complete control over Circle's interactions with L&T, we decline to pierce the corporate veil and hold them individually accountable for the company's actions at this time. Accordingly, all claims against Menga and Cacchiarelli are dismissed without prejudice.

## II.  Breach of Contract Claim (First Cause of Action)

Next, L&T claims that Circle breached its express warranty by providing counterfeit goods. SAC ¶¶ 90-93. Circle contends, however, that plaintiff has failed to sufficiently plead that it is entitled to damages under a breach of contract theory, asserting that plaintiff failed to provide Circle with timely notice of the breach "within a reasonable time after [it] discover[ed] or should

-9-

have discovered [the] breach[.]" Mot. at 11-12.[7]  Specifically,
Circle notes that the SAC states that L&T received returns of
Circle products soon after it began to sell them in May 2021 and
subsequently received complaints about counterfeit Circle
products, yet continued to place orders with the company until
December 2022.  Mot. at 12 (citing SAC ¶¶ 29-30).

Under New York law, a breach of contract claim premised on a
breach of express warranty requires: "(i) a material statement
amounting to a warranty; (ii) the buyer's reliance on this warranty
as a basis for the contract with his immediate seller; (iii) the
breach of this warranty; and (iv) injury to the buyer caused by
the breach."  Lugones v. Pete and Gerry's Organic, LLC, 440 F.
Supp. 3d 226, 244 (S.D.N.Y. 2020) (internal citations and
quotations omitted).

To assert such a claim, "a buyer must [have] provide[d] the
seller with timely notice of the alleged breach of warranty."
Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)

---

[7]    Defendants also contend that plaintiff has not stated a claim for breach
of contract because its allegations that Circle's products were counterfeit are
"conclusory[,]" claiming that the SAC states only that Circle was the
"primary[,]" rather than the sole, vendor of the types of products that L&T
claims were shown to be counterfeit, and that the items identified as
counterfeit by LA&A were not conclusively established to have been provided to
L&T by Circle. Mot. at 12-13. However, plaintiff alleges that Circle was L&T's
primary vendor of Gucci footwear, belts, and bags, and Yves Saint Laurent bags,
and that they "could only have come from Circle[.]" SAC ¶¶ 85-86. Further,
the exhibits attached to the SAC clearly demonstrate that the items that LA&A
determined to be counterfeit were identical to those purchased from Circle.
See, e.g., SAC ¶¶ 44-66, H-K, M-T, V-W, Y-Z, FF-GG. Accordingly, defendants'
position is not persuasive.

(citing N.Y. U.C.C. § 2-607(3)(a)).  What constitutes "timely notice" "depends on the nature, purpose and circumstances of such action." Tomasino v. Estee Lauder Companies Inc., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 1-204(2)).  Where "'only one inference may be drawn as to the reasonableness of the time . . . , it becomes a question of law' that can be resolved on a motion to dismiss." Maroney v. Woodstream Corp., 695 F. Supp. 3d 448, 465 (S.D.N.Y. 2023) (quoting Telit Wireless Sols., Inc. v. Axesstel, Inc., No. 15 Civ. 5278 (KBF), 2016 WL 1587246, at *6 (S.D.N.Y. Apr. 18, 2016)).

Plaintiff has adequately pled breach of contract by Circle. Circle expressly represented that the merchandise it sold to L&T was authentic, providing Declarations of Authenticity guaranteeing the legitimacy of the items later found to be counterfeit, see, e.g., SAC Exs. K, Q, T, W, Z, and signing an indemnification letter "represent[ing] and warrant[ing] that all [inventory purchased by L&T from Circle] [would] . . . be authentic and not counterfeit[,]" id. Ex. A.  The SAC further alleges that L&T reasonably relied on these representations when reselling the products it purchased from Circle to its customers, id. ¶ 101, and that LA&A conclusively determined that certain goods provided by Circle to L&T were counterfeit, id. Exs. E-G, L, U, X, DD-EE.  The requisite financial

harm flows naturally from the pled elements of the claim.  Id. ¶¶ 90-93.

Defendants do not dispute these allegations, contending only that L&T failed to plead its entitlement to damages in light of U.C.C. § 2-607(3)(a), which requires plaintiff to provide notice of a breach "within a reasonable time" after discovery.  "[T]he sufficiency and timeliness of [plaintiff's] notice is generally a question for the jury[.]"  Maroney, 695 F. Supp. 3d 448, 465 (S.D.N.Y. 2023) (quotation and citation omitted).  Given the limited factual record presently before the Court, we cannot determine at this time how long it should reasonably have taken L&T to discover that Circle had sold it counterfeit goods.  In this regard, it should be recalled that the SAC and accompanying exhibits sufficiently establish that Circle repeatedly assured L&T that the items it had sold were authentic, including in a letter dated January 5, 2023, see, e.g., SAC Exs. A, K, Q, T, W, Z, and the mere fact that customers may have returned goods that L&T had purchased from Circle before it commissioned the LA&A report does not conclusively indicate that L&T knew or should have known those goods were counterfeit, SAC ¶ 29.  Moreover, L&T sent a letter to Circle notifying it of LA&A's findings on March 14, 2023, only two weeks after it received the LA&A report.  See SAC ¶¶ 38, 69, Ex. AA.  Taken together, this evidence demonstrates that this is not

a scenario in which "only one inference may be drawn as to the
reasonableness" of plaintiff's notice to Circle.  <u>Maroney</u>, 695 F.
Supp. 3d at 465.

While we expect that discovery will further inform the parties
as to who knew what, and when, the facts in the current record are
more than sufficient to avoid dismissal.  Accordingly, the Court
declines to dismiss plaintiff's breach of contract claim at this
time.[8]

### III. Fraud Claim (Second Cause of Action)

Circle next asserts that plaintiff's fraud claims should be
dismissed because the SAC does not meet the more stringent pleading
requirements of Fed. R. Civ. P. 9(b), claiming plaintiff makes
only "conclusory statements of the defendants' intent" and fails

---

[8]    We note also that Circle does not allege that any delay in notice resulted
in harm to Circle or its executives.  Rather, Circle continued to sell products
to L&T, presumably at a profit, through December 2022.  SAC ¶¶ 22, 27.

Defendants also assert that a retailer "has a duty to inspect and discover
those defects that are discoverable by reasonable physical inspection[,]"  Mot.
at 11 (quoting <u>Rienzi & Sons v. I Bunoatavola Sini S.R.L.</u>, 20 Civ. 5704 (ERK)
(SJB), 2024 WL 3965989, at *7-8 (E.D.N.Y. Aug. 27, 2024) (internal quotations
omitted)), and that plaintiff should be barred from recovery because the SAC
did not allege that L&T inspected the products it received, <u>id.</u> at 11-12.
However, "when a defect is discoverable only by . . . an expert's examination,
a retailer will generally not be held liable for failure to discover[.]" <u>Topliff
v. Wal-Mart Stores East LP</u>, No. 04 Civ. 0297, 2007 WL 911891, at *44 (N.D.N.Y.
Mar. 22, 2007) (quotations omitted).  Nothing in the record presently before us
indicates that L&T knew or should have known that the products it received from
Circle were counterfeit, and defendants have not presented evidence sufficient
to show that the defects were discoverable through reasonable physical
inspection.  Accordingly, we decline to dismiss plaintiff's breach of contract
claim on this basis.

-13-

to adequately link the alleged counterfeit items to individual products that L&T purchased from Circle.  Mot. at 13.

To establish a claim for common law fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 170 (2d Cir. 2015) (citing Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009)).

In addition, plaintiff's common law fraud claim must satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." See Matana v. Merkin, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 9(b)).  Accordingly, a complaint alleging fraud must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).

-14-

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, a plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent" by "show[ing] that defendants had both motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) (internal citations and quotations omitted).

Plaintiff adequately alleges that Circle misrepresented the authenticity of its products, attaching to the SAC numerous documents containing explicit statements by defendants warranting that the products sold to L&T were authentic, see, e.g., SAC Exs. A, K, Q, T, W, Z, and a report prepared by an expert indicating that some, if not all, of those statements were false, see, e.g., id. Exs. E-G, L, U, X, DD-EE. Plaintiff further adequately alleges that it relied on these representations when selling the products it purchased from Circle to its customers. Id. ¶ 101.

Moreover, we see no basis for defendants' contention that plaintiff has failed to satisfy the requirements of Fed. R. Civ. P. 9(b). Under Rule 9(b), "intent . . . may be averred generally." Although Circle repeatedly represented to L&T over the course of nearly two years that the products it provided were "genuine" and

"authentic[,]" SAC Exs. A, the LA&A report demonstrates that at least some of those statements were false.  Nothing more is required at this stage of the litigation.

Accordingly, the Court declines to dismiss plaintiff's common law fraud claim against Circle.[9]

## IV.  Tortious Interference (Third Cause of Action)

Defendants further claim that the SAC has not adequately pled a claim for tortious interference, asserting that plaintiff failed to identify any specific contract with a third party or any contractual language that was breached as a result of its actions. Mot. at 13-14.

We note that defendants appear to have misread the SAC, as plaintiff has pled a claim for tortious interference with business relations, rather than contractual relations, SAC ¶¶ 103-106, and "[t]he lack of a valid contract . . . is not a barrier to a claim for tortious interference with business relations[,]" Scutti Enteprises, LLC v. Park Place Entertainment Corp., 322 F.3d 211, 215 (2d Cir. 2003) (citing Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998)).  To state a claim for tortious

---

[9]    Defendants argue that plaintiff is "[un]able to verify whether the products it accepted from Circle were the same products it believes are counterfeit[,]" contending that plaintiff failed to allege "how and by whom" the merchandise was transported from the airport to L&T's warehouses.  Reply at 3.  However, as stated supra n. 7, the extensive factual record attached to the SAC clearly establishes that the items examined by LA&A can be easily matched with items that Circle delivered to plaintiff, and plaintiff represents that L&T only purchased those types of items from Circle.  SAC ¶¶ 85-86.

interference with business relations under New York law, a plaintiff must prove that: "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2002). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1104 (N.Y. 2004) (citations omitted).

The SAC alleges that, by supplying counterfeit goods to L&T and making material misrepresentations regarding their authenticity, Circle "wrongfully interfered with L&T's business relations with its customers and L&T's relations with designers[,]" asserting that "[c]ompanies such as Gucci will not let L&T sell their merchandise on its website." SAC ¶¶ 103-106. However, plaintiff's failure to specifically identify the business relationships with which it alleges Circle tortiously interfered is fatal to its tortious interference claim. See, e.g., Plasticware, LLC v. Flint Hills Res., LP, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) ("Plaintiff has not adequately alleged specific

-17-

business relationships with which [d]efendant allegedly interfered.") (emphasis in original).  A relationship with "the public" at large is not the sort of continuing business relationship that can be the subject of a tortious interference claim.  See Nourieli v. Lemonis, No. 20 Civ. 8233 (JPO), 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021) (dismissing plaintiff's claim for tortious relations with its "customers" because "these types of generalized allegations about hypothetical business relations are not enough"); see also Universal Marine Med. Supply, Inc. v. Lovecchio, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998) (similar).

Moreover, while L&T specifically contends that Gucci no longer permits L&T to sell their merchandise on its website following Circle's tortious interference, SAC ¶ 105, L&T does not allege that it had any formal or informal business relationship with Gucci before it received a letter from the company on June 15, 2023 requesting that L&T cease all sales of Gucci brand products, SAC ¶¶ 73-76, Ex. BB.  The SAC also fails to allege that Circle "directed" its conduct at Gucci or intended to interfere with L&T's business relations with Gucci.  See B&M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) ("[T]he defendant must direct some activities towards the third party and convince the third party not to enter into a business

relationship with the plaintiff[.]") (internal quotation and citation omitted); see also Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017) (dismissing tortious interference claims where plaintiff failed to allege that "the target of [defendants'] conduct was [plaintiff's] contractual arrangements with" a third party). Accordingly, plaintiff's claim for tortious interference against Circle is dismissed.

## V.    Indemnification (Fourth Cause of Action)

Next, Circle asserts that the SAC does not sufficiently plead a claim for common law indemnification because plaintiff participated in the sale of counterfeit goods on its site, contending that L&T cannot "claim indemnification against Circle based on [its] own asserted conduct." Mot. at 14-15.

"The principle of common law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party." Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP, 834 F. Supp. 2d 141, 161 (E.D.N.Y. 2011) (quoting Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc., 45 A.D. 3d 792, 796 (2d Dep't 2007)). A party who "committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party" is entitled to common law indemnification. In re Houbigant Inc., 914 F. Supp.

964, 992 (S.D.N.Y. 1995) (quoting D'Ambrosio v. City of New York, 55 N.Y.2d 454, 461 (1982)).  However, where a party has "itself participated to some degree in the wrongdoing [it] cannot receive the benefit of the [common law indemnity] doctrine[.]"  Fagan v. AmerisourceBergen Corp., 356 F.Supp. 2d 198, 221 (S.D.N.Y. 2004) (quoting Durabla Mfg. Co. v. Goodyear Tire and Rubber Co., 992 F. Supp. 657, 660 (S.D.N.Y. 1998) (citations omitted)).

Plaintiff seeks indemnification for "any liabilities, claims, losses damages, injuries, costs, or expenses made against or claimed by Gucci or others[,]" SAC ¶ 112, claiming that, due to defendants' conduct, it is now "subject to claims from the brands and designers of the merchandise at issue, including . . . Gucci[,]" id. ¶ 111.  The only specific action cited by plaintiff in support of its claim is the suit brought by Gucci against L&T in this District, in which Gucci alleged that L&T "willfully and intentionally" counterfeited Gucci's trademarked products.  See Gucci America, Inc., 23 Civ. 10239 (LGS), ECF No. 68 at 3.[10]  The court granted default judgment in favor of Gucci on August 23, 2024, id., and referred the case to a magistrate judge for a

---

[10]    Specifically, Gucci alleged that L&T's use of the GUCCI Mark constituted "trademark counterfeiting and infringement, unfair competition, false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(c); trademark infringement and unfair competition under the common law of the State of New York; and dilution under New York General Business Law § 360-L."  Gucci America, Inc., 23 Civ. 10239 (LGS), ECF No. 68 at 3.

damages inquest, id., ECF No. 69.  On April 9, 2025, Magistrate Judge Robyn F. Tarnofsky issued an Amended Report and Recommendation recommending, inter alia, that the court award Gucci $1,300,000 in statutory damages under the Lanham Act, 15 U.S.C. §§ 1117(c)(2).  Gucci America, Inc., 23 Civ. 10239 (LGS) (RFT), ECF No. 84 at 12-19.  As of the date of this Order, this report has not yet been adopted by the court.

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  Accordingly, the order granting default judgment in Gucci America established L&T's liability in connection with Gucci's claims under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), as well as its state law claims for trademark infringement, unfair competition, and dilution.  23 Civ. 10239 (LGS), ECF No. 68 at 3.  As defendants note, common law indemnification is not available to reimburse a defendant for losses attributable to violation of the Lanham Act. See Zino Davidoff SA v. Selective Distribution Intern. Inc., No. 07 Civ. 10326 (MHD), 2013 WL 1245974, at *4-5 (S.D.N.Y. Mar. 8, 2013) (collecting cases), report and recommendation adopted, 2013 WL 1234816 (S.D.N.Y. Mar. 27, 2013); see also Morgan Art Foundation Ltd. v. McKenzie, 18 Civ. 4438 (AT), 2019 WL 2725625, at *19

-21-

(S.D.N.Y. July 1, 2019); <u>Chen v. New Trend Apparel, Inc.</u>, No. 11 Civ. 324 (GBD) (MHD), 2014 WL 13180992, at *4 (S.D.N.Y. Aug. 6, 2014), <u>report and recommendation adopted</u>, 2014 WL 13108990 (S.D.N.Y. Sept. 24, 2014).

Next, we turn to L&T's effort to seek indemnification in connection with Gucci's state-law claims. "[A] defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint[,]" <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation and citation omitted), and it is well established that "a party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the [common law indemnification] doctrine[,]" <u>Durabla</u>, 992 F. Supp. at 660 (internal quotation and citation omitted). By defaulting in the Gucci case, L&T admitted that it "willfully and intentionally" infringed upon the Gucci trademark by reselling counterfeit products. <u>Gucci America, Inc.</u>, ECF No. 68 at 3. This suffices to establish that L&T "participated to some degree in the wrongdoing[.]" <u>Innovation Ventures, LLC v. Ultimate One Distributing Corp.</u>, Nos. 12 Civ. 5354, 13 Civ. 6397 (KAM), 2016 WL 1317524, at *5 (E.D.N.Y. Mar. 31, 2016) (quotation omitted) (citing <u>Durabla</u>, 992 F. Supp. at 660 ("[T]here is nothing passive about the role of a distributor of a defective . . .

product[.]")).   Indemnification is not available under such circumstances.[11]

Accordingly, defendants' motion to dismiss L&T's claim for common law indemnification is granted.[12]

## VI. Lost Reputation (Fifth Cause of Action)

Finally, Circle contends that the SAC does not state a claim for loss of reputation, asserting that plaintiff's claim must be dismissed because it "is not a cognizable claim of liability, but . . . a mere assertion of damages under some other theory of liability[.]"  Mot. at 15.   In response, plaintiff argues only that its allegations are sufficient to support this claim, asserting that L&T "had an esteemed reputation which [d]efendants have seriously damaged by causing [p]laintiff to sell counterfeit

---

[11]    We do not intend to imply that any contemporaneous evidence exists to show that L&T deliberately re-sold goods knowing that they were counterfeit. Rather, this holding is based solely upon L&T's default in <u>Gucci America, Inc.</u>, 23 Civ. 10239 (LGS).   At this point in the proceedings, the Court has not reviewed any evidence suggesting that L&T re-sold counterfeit goods knowingly or deliberately.

[12]    We note that this does not preclude plaintiff from subsequently seeking common law indemnification in connection with any other action brought against it as a result of defendants' conduct.   However, at present, the Court is not aware of any other cases pending against L&T that are premised on facts similar to those in the <u>Gucci America, Inc.</u> action.   Accordingly, plaintiff lacks standing to seek indemnification in connection with any prospective judgment in any hypothetical case brought by another party.   <u>See Davis v. Fed. Election Comm'n</u>, 554 U.S. 724, 734 ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."); <u>see also Olsen v. Steris Corp.</u>, No. 17 Civ. 4522 (SJF), 2018 WL 10676902, at *7 (E.D.N.Y. June 18, 2018) (An injury that "is entirely contingent on future events, which may or may not materialize, [] cannot be said to be actual or imminent.").

goods[.]"  Opp. at 21.  Neither party cites any case law to support its position.

New York does not recognize an independent cause of action for loss of reputation.  de Rothschild v. Serlin, No. 19 Civ. 11439 (PGG), 2021 WL 860227, at *6, n. 5 (S.D.N.Y. Mar. 8, 2021).  Rather, "any such claim is treated as a claim for defamation."  Id. (citing Cohen v. Avanade, Inc., 874 F. Supp. 2d 315, 324-25 (S.D.N.Y. 2012)).  To establish a claim for defamation under New York law, a plaintiff must be able to prove the existence of "a false statement, published without privilege or authorization to a third party, constituting fault . . . [that] must either cause special harm or constitute defamation per se."  See Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d Cir. 2003) (citing Dillon v. City of New York, 704 N.Y.S. 2d 1, 5 (1999)).

Plaintiff has not established the existence of any of the elements of a defamation claim under New York law.  Accordingly, plaintiff's cause of action for lost reputation is dismissed.[13]

---

[13]    Dismissal of this claim does not preclude plaintiff from seeking damages for loss of reputation in connection with its breach of contract action. Although New York law generally does not permit recovery for loss of reputation in a breach of contract action, Karetsos v. Cheung, 670 F. Supp. 111, 115 (S.D.N.Y. 1987), some courts have allowed such damages where a plaintiff can prove "specific business opportunities lost as a result of [its] diminished reputation," I.R.V. Merch. Corp. v. Jay Ward Prods., Inc., 856 F. Supp. 168, 175 (S.D.N.Y. 1994).

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Specifically, the following claims are dismissed in their entirety: (i) all claims against defendants Menga and Cacchiarelli; (ii) plaintiff's tortious interference claim against Circle (Count Three); (iii) plaintiff's common law indemnification claim against Circle (Count Four); and (iv) plaintiff's loss of reputation claim against Circle (Count Five). Defendants' motion to dismiss plaintiff's breach of contract claim against Circle (Count One) and fraud claim against Circle (Count Two) is denied.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF Nos. 28-30.

**SO ORDERED.**

Dated:    April 14, 2025
          New York, New York

                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE